407 So.2d 941 (1981)
Marc MORGANSTINE and Helena Morganstine, His Wife, Appellants,
v.
Hubert L. ROSOMOFF, M.D., Appellee.
Nos. 80-434, 80-554.
District Court of Appeal of Florida, Third District.
December 8, 1981.
Rehearing Denied January 12, 1982.
*942 Spence, Payne, Masington & Grossman, Podhurst, Orseck & Parks and Joel D. Eaton, Miami, for appellants.
Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, for appellee.
Before HENDRY, BASKIN and FERGUSON, JJ.
PER CURIAM.
The plaintiffs-appellants seek review of a jury verdict and judgment for the defendant doctor in this medical malpractice case. Plaintiffs appeal this judgment on the basis of erroneous evidentiary rulings by the trial court and the court's failure to give requested jury instructions, each of which is alleged to constitute prejudicial error requiring a new trial. We hold that reversible *943 error has been demonstrated because of the court's refusal to instruct the jury on the effect of a fraudulent misrepresentation of a material fact in obtaining consent to perform surgery. We find that the evidence presented at trial required the granting of such charge and reverse the judgment under review.
Plaintiff Dr. Marc Morganstine, an osteopathic physician, consulted with several neurologists after receiving a spinal injury that resulted in temporary paralysis. After extensive diagnostic procedures, including several myelograms (in which dye is injected into the patient's spinal canal and x-rays taken), it was determined that Morganstine's spinal cord was being compressed at two places in the cervical region. Morganstine selected Dr. Hubert Rosomoff, the appellee, to perform an anterior diskectomy and fusion at two levels of Morganstine's cervical spine. Morganstine experienced paralysis in his extremities for several hours following the operation and ultimately sustained a permanent weakness on the right side of his body. Morganstine and his wife Helena filed an action for damages against appellee, charging him with negligent failure to perform a post-operative myelogram and reoperate, failure to obtain Morganstine's informed consent, and breach of an express warranty purportedly made by Dr. Rosomoff that no risks accompanied the operation if he performed it.[1] A written consent form signed by Morganstine prior to surgery was introduced into evidence. Each side presented favorable testimony by expert witnesses on the question whether Dr. Rosomoff's failure to perform a post-operative myelogram was within the acceptable standard of care. The jury returned a verdict for Dr. Rosomoff and the court entered a final judgment. The motion for a new trial was denied and plaintiffs' appeal from the final judgment was consolidated with an interlocutory appeal from a cost judgment entered for the defendant.
At the conclusion of the trial, the court instructed the jury in the language of the first sentence of subsection (4)(a) of Section 768.46, Florida Statutes (Supp. 1976), as follows:
A consent which is evidenced in writing and meets the requirements of subsection (3) shall, if validly signed by the patient or another authorized person, be conclusively presumed to be a valid consent.
The trial court refused, despite a request by plaintiffs' counsel, to read the final qualifying sentence of the subsection:
This presumption may be rebutted if there was a fraudulent misrepresentation of a material fact in obtaining the signature.
When evidence exists to support a litigant's theory of the case, he is entitled to a jury instruction to that effect, even though evidence of the opposing party controverts the theory. Corbett v. Dade County Board of Public Instruction, 372 So.2d 971 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1192 (Fla. 1980); Seguin v. Hauser Motor Co., 350 So.2d 1089 (Fla. 4th DCA 1977); Gallagher v. Federal Insurance Co., 346 So.2d 95 (Fla. 3d DCA), cert. denied, 354 So.2d 980 (Fla. 1977). Failure to give a requested instruction does not automatically, however, require reversal. Rather, in determining whether the trial court erred, the requested jury charges must be interpreted in light of the evidence, pleadings and other instructions to see whether, as a whole, the instructions fairly state the law, or whether the jury may have been misled. Grimm v. Prudence Mutual Casualty Co., 243 So.2d 140 (Fla. 1971); Llompart v. Lavecchia, 374 So.2d 77 (Fla. 3d DCA 1979), cert. denied, 385 So.2d 758 (Fla. 1980); Wages v. Snell, 360 So.2d 807 (Fla. 1st DCA 1978).
In the instant case, the record shows that Dr. Rosomoff testified that he fully advised Morganstine of all risks associated with the surgery, and the record contains a written consent form signed by Morganstine. An instruction to the jury on the first sentence of Section 768.46(4)(a) was *944 thus indicated. Morganstine testified, however, that Dr. Rosomoff assured him that there would be no complications. There was also evidence in the record to indicate that Dr. Rosomoff's statement, if made, wasn't true since Dr. Rosomoff testified to writing an article in which he described a number of complications experienced by his patients following surgery. Whether any complications would be experienced by Morganstine following surgery was certainly a material factor in his decision to undergo the procedure. Since Morganstine testified his consent to the surgery was fraudulently obtained, this issue, though controverted, should have been submitted to the jury for resolution by charging them on the second sentence of Section 768.46(4)(a), rather than having been determined by the judge as a matter of law. See Sullivan v. Price, 386 So.2d 241 (Fla. 1980); Latin American Shipping Co. v. Pan American Trading Corp., 363 So.2d 578 (Fla. 3d DCA 1978). Accord, Dandashi v. Fine, 397 So.2d 442 (Fla. 3d DCA 1981). Cf. Caputo v. Taylor, 403 So.2d 551 (Fla. 1st DCA 1981).
The trial court's refusal to read to the jury the last clause of Section 768.46(4)(a) was compounded by its refusal to instruct the jury on Section 768.45(3)(b), Florida Statutes (Supp. 1976). The latter paragraph is an express exception to Section 768.45(3),[2] defining accepted standards of care in cases of medical intervention, which was read to the jury. Paragraph (b) states that the provisions of Section 768.45(3) apply only when the medical intervention is undertaken with the informed consent of the patient obtained in compliance with the provisions of Section 768.46. Since the complaint and evidence raised a question as to the validity of the consent, the failure to instruct the jury on the exception to Section 768.45(3) may have been misleading. Indeed, under the circumstances of this case, the jury should be read Section 768.46 (entitled the "Florida Medical Consent Law") in its entirety. The provisions of Section 768.46, virtually incomprehensible even as a whole, become even more misleading when read in piecemeal fashion, as done in this case.
Viewing the jury instructions in their entirety and in light of the pleadings and evidence, we find that omission of the requested instructions amounted to a directed verdict in the defendant's favor on the issue of consent. Accordingly, the error raised cannot be considered harmless, and the judgment under review must be reversed along with the cost judgment in favor of Dr. Rosomoff.
Having determined that reversible error occurred in the trial below, it is not necessary to our holding to dispose of plaintiffs' remaining points on appeal. However, to avoid needless errors in the event of retrial, we have examined plaintiffs' other assignments of error. We agree that Dr. Oscar Sugar's testimony concerning the statistical incidence of improvement of post-operative patients with and without re-myelogramming, based on unverified out-of-court writings, constituted hearsay and should not have been allowed. Auletta v. Fried, 388 So.2d 1067 (Fla. 4th DCA 1980). See also Rice v. Clement, 184 So.2d 678 (Fla. 4th DCA 1966). However, the admission into evidence of Dr. Arthur Surloff's testimony was not erroneous. The Florida Supreme Court has specified that under the provisions of paragraph (c) of Section 768.45(2), the trial court is required to make a determination that a proffered witness does not possess the training, experience, or *945 knowledge to testify on the prescribed standard of care before refusing to allow such testimony when the witness does not otherwise qualify as a "similar health care provider." Chenoweth v. Kemp, 396 So.2d 1122 (Fla. 1981).
Reversed and remanded for new trial.
NOTES
[1] The complaint also charged Dr. Rosomoff with negligence in performance of the initial surgery, but this aspect of the case was abandoned by the plaintiffs at trial.
[2] 768.45 Medical negligence; standards of recovery, etc. 

(3)(a) If the injury is claimed to have resulted from the negligent affirmative medical intervention of the health care provider, the claimant must, in order to prove a breach of an accepted standard of care, show that the injury was not within the necessary or reasonably forseeable results of the surgical, medicinal, or diagnostic procedure constituting the medical intervention, if the intervention from which the injury is alleged to have resulted was carried out in accordance with an acceptable standard of care by a reasonably prudent similar health care provider.
(b) The provisions of this subsection shall apply only when the medical intervention was undertaken with the informed consent of the patient in compliance with the provisions of s. 768.46. [e.s.]